UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE T. GARDNER, | ) | CASE NO. 1:12CV2498 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Kyle T. Gardner ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the ALJ's decision and dismisses Plaintiff's case with prejudice.

**I.    PROCEDURAL AND FACTUAL HISTORY**

Plaintiff applied for SSI and DIB on October 14, 2008 alleging disability beginning on December 31, 2007 due to hepatitis C, attention deficit/hyperactivity disorder ("ADHD"), and "slow learner/learning disability." ECF Dkt. #12 at 234-238, 258. The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 97-103, 106-121. Plaintiff requested an administrative hearing, and on April 14, 2011, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff's girlfriend, Plaintiff's mother, a vocational expert ("VE") , and Plaintiff, who was represented by counsel. *Id.* at 46, 68, 121,

On May 4, 2011, the ALJ issued a Decision denying benefits. ECF Dkt. #12 at 21-33. Plaintiff appealed the Decision, and on August 10, 2012, the Appeals Council denied review. *Id.* at 1-12.

On October 5, 2012, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On March 24, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #13. On June 7, 2013,

Defendant filed a brief on the merits. ECF Dkt. #15. On June 21, 2013, Plaintiff filed a reply brief. ECF Dkt. #16. On August 5, 2013, the parties consented to the undersigned's jurisdiction. ECF Dkt. #19.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff, who was twenty-five years old on the alleged onset date, suffered from adjustment disorder with mixed anxiety and depressed mood, ADHD, antisocial personality traits, and hepatitis C, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dk. #12 at 23. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526 ("Listings"). *Id*. at 23-24.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff was limited to jobs not requiring written communications; jobs involving simple, routine and repetitive tasks; a work environment where only occasional decision-making was required and where changes occur on no more than an occasional basis; jobs where Plaintiff would be reminded of assigned tasks at least twice per day; and jobs with no more than occasional interaction with coworkers. ECF Dkt. #12 at 24-25. Based upon this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could return to his past relevant work as a laborer and kitchen helper, and alternatively, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of clothes presser, cleaner, and metal sorter. *Id.* at 32-33. Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to SSI or DIB.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

-2-

> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V. ANALYSIS

Plaintiff advances a host of arguments in this appeal. The Court addresses each in turn.

### A. WEIGHT ASSIGNED TREATING PSYCHIATRIST AND THERAPIST ASSESSMENTS

Plaintiff first asserts the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Sansait, and his therapist, Ms. Ottolenghi. ECF Dkt. #13 at 4-8. The Court finds that the ALJ properly evaluated these opinions and substantial evidence supports the ALJ's evaluation and findings concerning the weight given to each.

On April 15, 2009, Dr. Sansait, Plaintiff's treating psychiatrist, completed a form entitled "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" as it related to Plaintiff. ECF Dkt. #12 at 466-467. The form requested that Dr. Sansait describe Plaintiff's ability to performing certain activities on a regular and continuing basis, meaning eight hours per day and five days per week. *Id.* at 466. It also requested that Dr. Sansait identify whether Plaintiff had an extreme, marked, moderate, or less than moderate limitation as to each specified ability, and each of those terms were defined on the form. *Id.*

Dr. Sansait indicated that Plaintiff had less than moderate limitations in remembering, understanding, and following simple directions, and moderate limitations in maintaining attention and concentration for two hour periods of time and in performing work activities at a reasonable pace. ECF Dkt. #12 at 466. As to the limitation on Plaintiff's ability to keep a regular work schedule and maintain punctual attendance, Dr. Sansait checked the "marked" box and wrote that Plaintiff was impulsive and would engage in activities that could mess up his routine which would lead to failure to keep his appointment and schedule. *Id.* at 467. As to the degree of limitation in Plaintiff's

ability to interact appropriately with others, including the public, supervisors and co-workers, Dr. Sansait checked "marked" and explained that Plaintiff had poor relationships due to his impulsive and explosive behavior. *Id.* Dr. Sansait also checked "marked" for the degree of limitation as to Plaintiff's ability to withstand the stresses and pressures of routine, simple, unskilled work, noting that Plaintiff was unable to focus and keep his attention long enough to do his work. *Id.* With regard to the limitation of Plaintiff's ability to make judgments commensurate with the functions of unskilled work, such as making simple, work-related decisions, Dr. Sansait checked "marked" and wrote that Plaintiff had different jobs because he snapped at co-workers. *Id.* He further indicated that Plaintiff was impulsive which lead to poor decision-making. *Id.*

In his decision, the ALJ reviewed the testimonial and the medical evidence. ECF Dkt. #12 at 26-31. He then separately reviewed each medical opinion, including that of Dr. Sansait. *Id.* at 29-31. As to Dr. Sansait, the ALJ noted his findings and conclusions from the medical source statement, including the marked limitations. *Id.* at 29-30. The ALJ then attributed little weight to Dr. Sansait's assessment, finding that it was "inconsistent with the undersigned's credibility determination and with the record as a whole." *Id.* at 31.

Plaintiff complains that the reasons that the ALJ offered in this paragraph for the weight given to Dr. Sansait's assessment do not constitute "good reasons" under the treating physician rule. ECF Dkt. #13 at 4-7. Plaintiff also asserts that the ALJ failed to apply the appropriate factors for attributing less than controlling weight to a treating source's opinions. ECF Dkt. #13 at 4-7.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and

-5-

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

Further, the "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' " *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

In *Gayheart*, the Sixth Circuit recognized that conflicting substantial evidence must consist of "more than the medical opinions of the nontreating and nonexamining doctors." 710 F.3d at 376. The Sixth

-6-

Circuit reasoned that "[o]therwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Id.* at 377.

In the instant case, the Court finds that the ALJ properly applied the treating physician rule to Dr. Sansait's assessment. If the ALJ's section as to Dr. Sansait's assessment is read in isolation from the rest of his decision, it is clear that he did not properly apply the treating physician rule. In that section of the opinion, the ALJ merely reviewed Dr. Sansait assessment and concluded that it was inconsistent with the ALJ's credibility determination and with the record as a whole. ECF Dkt. #12 at 31.

However, reviewing the ALJ's entire decision, he thoroughly analyzed the record evidence and provided good reasons for his decision to attribute less than controlling weight to Dr. Sansait's assessment. The ALJ explained the reasons for discounting the credibility of Plaintiff, his mother and his girlfriend in a section preceding his discussion of the medical source opinions in the record. He thoroughly reviewed Plaintiff's allegations as to why he could not work and he also reviewed the testimony and statements of Plaintiff's mother and girlfriend. *Id.* at 25-26. He then explained his reasons for discounting Plaintiff's credibility, first noting that evidence in the record suggested that Plaintiff stopped working for reasons not related to the impairments that he alleged were disabling. *Id.* at 26. The ALJ noted Plaintiff's report at an April 9, 2008 diagnostic assessment that he last worked in January of 2008 and lost this job because he was arrested for driving under the influence of alcohol and did not have a driver's license. *Id.*, citing ECF Dkt. #12 at 445, 448. The ALJ further cited to a report by Plaintiff at a January 12, 2009 consultative examination that he was imprisoned numerous times for varying periods of thirty days, six months, to three years, which was a reason that he did not work. ECF Dkt. #12 at 26, citing ECF Dkt. #12 at 415. He also cited Plaintiff's report at the same examination that he stayed home and received welfare benefits so that he could care for his three year-old son because he had full custody of him. *Id.*

In discounting Plaintiff's credibility as to the disabling nature of Plaintiff's impairments, the ALJ also cited to the fact that Plaintiff was able to physically and emotionally care for his young son

-7-

and cited to Plaintiff's report that he was taking care of his son by himself for various periods of time. ECF Dkt. #12 at 27, citing ECF Dkt. #12 at 367, 445.

The ALJ also cited to Plaintiff's lack of honesty in reporting illegal substance use, citing Plaintiff's repeated denial of current illegal substance use at various appointments and his indication that he last used marijuana in 2007, while a February 10, 2010 drug screen showed the presence of cocaine metabolite and marijuana metabolite in his system. ECF Dkt. #12 at 27, citing ECF Dkt. #12 at 496. The ALJ further found that some of Plaintiff's reports showed that he performed some work since his disability onset date. ECF Dkt. #12 at 26-27. The ALJ noted that on April 9, 2008, Plaintiff reported that he last worked in January of 2008 and he lost his job due to an arrest for driving under the influence of alcohol. *Id*. at 26. The ALJ also cited to an April 2, 2008 emergency department visit in which Plaintiff reported that he frequently used his hands as part of his occupation as a mechanic. *Id*. at 26-27.

Accordingly, although the ALJ did not provide support for his credibility determination in the same section in which he attributed little weight to Dr. Sansait's assessment, he did provide a thorough analysis of his reasons for discounting Plaintiff's credibility in an earlier section of his decision and therefore could rely upon this determination as a good reason for attributing little weight to Dr. Sansait's assessment.

The ALJ also provided a thorough analysis of the record medical evidence, including the notes and assessment of Dr. Sansait. He reviewed each medical opinion and numerous treatment notes in the record. ECF Dkt. #12 at 31. As to Dr. Sansait, the ALJ noted that Plaintiff was ordered into individual counseling and group alcohol or drug treatment in connection with two convictions for driving under the influence. *Id*. at 27. The ALJ reviewed Dr. Sansait's psychiatric evaluation of Plaintiff on July 24, 2008 and the progress notes of Ms. Ottolenghi in conjunction with that court-ordered assessment and counseling. *Id*. The ALJ noted that in his psychiatric evaluation, Dr. Sansait diagnosed Plaintiff with ADHD, alcohol dependence in partial remission, marijuana dependence in partial remission, personality disorder not otherwise specified, and rule out substance

induced mood disorder. *Id*. at 28. The ALJ also noted that Plaintiff was prescribed medication and began counseling and Plaintiff initially had issues with medication compliance. *Id*.

The ALJ reviewed various progress notes which provided support for attributing less weight to Dr. Sansait's marked limitations for Plaintiff, including a September 17, 2008 treatment note that Plaintiff reported improvement in remembering appointments, cancelling those he could not keep, and carrying a calendar with him daily. ECF Dkt. #12 at 28. He also noted that on November 11, 2008, Plaintiff told Ms. Ottolenghi that he was doing well due to their therapy sessions, he was ready to "go it alone," and he was considering discharge at his next appointment. *Id*. The ALJ cited to a February 16, 2009 discharge summary that indicated that Plaintiff had not returned to treatment after he reported progress in using his skills and coping strategies and a decrease in ADHD symptom interference. *Id*.

The ALJ also cited to the notes of Dr. Bentley, a psychiatrist, who Plaintiff began seeing in December 2, 2009 due to depression and obsessive-compulsiveness symptoms. ECF Dkt. #12 at 28. Dr. Bentley diagnosed major recurrent depression, obsessive-compulsive disorder, ADHD and attention-deficit disorder. *Id*. The ALJ noted that at Plaintiff's next appointment with Dr. Bentley in March of 2009, he told Dr. Bentley that he was trying to obtain disability benefits due to ADHD and a learning disability and Dr. Bentley then prescribed him Ritalin. *Id.* The ALJ noted that on April 14, 2010, Plaintiff reported that he was getting along better with people and could focus on his jobs. *Id.* He also cited to Dr. Bentley's note on October 6, 2010 that when Plaintiff requested that Dr. Bentley complete a form for Jobs and Family Services that Plaintiff was unstable and unable to work, Dr. Bentley declined to complete the form and told Plaintiff that he should proceed with the job training offered by the agency because he was responding well to the ADHD treatment and was concentrating better. *Id*.

Plaintiff asserts that the ALJ erred in relying upon the opinions of the non-examining state agency physicians in violation of *Gayheart* in order to attribute less than controlling weight to Dr. Sansait's assessment and he also failed to articulate the required factors under 20 C.F.R. §§ 404.1527 and 416.927. ECF Dkt. #13 at 5-6. The Court finds no merit to these assertions. The ALJ

-9-

provided sufficient review of the medical evidence and other evidence of record in order to make clear that he attributed less than controlling weight to Dr. Sansait's opinion because it was not supported by the treatment notes and was inconsistent with the other evidence of record that he identified, not because it was inconsistent with the opinions of nonexamining medical sources. Moreover, while the ALJ did not expressly review each of the factors of 20 C.F.R. §§ 404.1527(c) and 416.927(c) in explaining his decision to give less than controlling weight to Dr. Sansait's opinion, he did address the supportability and consistency of that opinion in his decision. Although he must consider and balance the factors, the ALJ is not required to address each factor in his decision. *Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011).

The Court finds no merit to Plaintiff's assertion that the ALJ erred by attributing significant weight to Ms. Ottolenghi's opinions yet failed to evaluate her opinions that Plaintiff would need to learn coping skills and strategies and would be able to work eventually "with supports." ECF Dkt. #13 at 7-8. The ALJ cited to the mental residual functional capacity form completed by Ms. Ottolenghi. ECF Dkt. #12 at 30. He noted that Ms. Ottolenghi listed Plaintiff's ADHD and learning disability as severe limitations, but she concluded that Plaintiff was able to attend job-find classes and could be involved in a work experience program. *Id.* The ALJ also cited to Ms. Ottolenghi's adult diagnostic assessment for Plaintiff which indicated diagnoses of ADHD, alcohol abuse, and cannabis abuse. *Id*. In a preceding section of his decision, the ALJ cited to many of Ms. Ottolenghi's treatment notes with Plaintiff. *Id*. at 27-28. The ALJ noted that Ms. Ottolenghi recommended counseling to learn coping skills for his ADHD, restarting ADHD medications that Plaintiff took when he was younger, and attendance of alcoholics anonymous meetings. *Id.* In particular, the ALJ cited to Ms. Ottolenghi's treatment notes indicating that Plaintiff was reporting that he was remembering appointments and he was discharged in February of 2009 after reporting a decrease in his ADHD symptoms and progress in using his skills and coping strategies. *Id.* Accordingly, the Court finds that the ALJ did evaluate Ms. Ottolenghi's opinion and also provided sufficient reasons for the weight that he gave to the assessment.

Based upon the foregoing, the Court finds that the ALJ's decision as a whole provided good reasons for attributing the weight that he gave to the assessments of Dr. Sansait and the ALJ more than adequately addressed Ms. Ottolenghi's assessment and treatment notes.

### B.     RFC AND HYPOTHETICALS PRESENTED TO VE

Plaintiff also presents a host of arguments concerning the ALJ's RFC and the hypothetical individuals that he presented to the VE on the basis of that RFC.  The Court finds that substantial evidence supports the ALJ's RFC and his reliance upon the testimony presented by the VE.

Plaintiff first contends that the ALJ erred when he attributed significant weight to the assessment of Ms. Ottolenghi but did not include in his RFC or his hypotheticals to the VE her opinion that Plaintiff would need to learn coping skills and strategies and would be able to work eventually "with supports."  ECF Dkt. #13 at 7-8.  The Court finds that the ALJ adequately explained why he did not include these statements in his RFC.

While an ALJ is not required to adopt every finding of a medical source to which he has assigned weight, he is required to explain why he relied on certain findings and not others. *See, e.g., Fleischer v. Astrue*, 774 F.Supp.2d 875, 881 (N.D.Ohio 2011)("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96–8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996).  However, it must be remembered that it is the ALJ who ultimately determines a claimant's RFC.  *Coldiron v. Comm'r of Soc. Sec.*, 371 Fed. App'x 435, 439 (6th Cir. 2010), citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 578 (6th Cir. 2009)("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); and 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge ... is responsible for assessing your residual functional capacity.").

Here, the Court questions whether Ms. Ottolenghi's coping strategies and "supports" suggestions could be translated into RFC limitations. The Court notes that Ms. Ottolenghi does not identify the "supports" that Plaintiff may need in order to return to work. *Id*. at 369. Further, her assessment relating to coping skills and strategies merely states that these were part of her treatment plan with Plaintiff, in addition to finding the appropriate ADHD medication and increasing his self-confidence and ability to succeed in his endeavors. *Id*. Nevertheless, the ALJ did not address the coping strategies and "supports" suggestions by Ms. Ottolenghi in the section in which he reviewed her assessment. ECF Dkt. #12 at 30. However, in a preceding section of his decision, he did cite to many of Ms. Ottolenghi's treatment notes that followed her September 2, 2008 assessment which negated any need for a coping strategy or "supports" limitation, if one indeed exists. In particular, the ALJ cited to Ms. Ottolenghi's treatment note of November 11, 2008 in which Plaintiff reported that he was doing very well due to the therapy sessions and he believed that he was ready to "go it alone." *Id.* at 28, citing ECF Dkt. #12 at 349. The ALJ also cited to the February 16, 2009 discharge summary from counseling which indicated that Plaintiff did not return to treatment after reporting progress in using skills and coping strategies and a decrease in ADHD symptom interference. *Id*. at 442. Accordingly, the Court finds that substantial evidence supports a finding that the ALJ properly addressed Ms. Ottolenghi's assessment and his decision to not include a limitation relating to coping strategies or "supports."

Plaintiff also complains that the ALJ erred by finding that Plaintiff had moderate limitations in concentration, persistence or pace but not accounting for said limitations in his RFC. ECF Dkt. #13 at 15. Plaintiff asserts that a limitation to simple, routine and repetitive tasks does not account for such limitations and he cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 517 (6th Cir. 2010) in support. *Id.*

In *Ealy*, a non-examining physician specifically limited Ealy's ability to sustain attention to complete simple repetitive tasks "for two hour segments over an eight-hour day where speed was not critical." 594 F.3d at 516. The ALJ did not incorporate this limitation into the hypothetical individual that he presented to the VE. *Id*. The Sixth Circuit held that "[i]n order for a vocational

-12-

expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Id.*[citations omitted].

However, *Ealy* "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.,* No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011). Instead*, "Ealy* stands for a limited, fact-based ruling which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id.*

Here, no such specific limitations as to concentration, persistence or pace restrictions were opined. The ALJ found Plaintiff to be moderately limited in his concentration, persistence or pace. ECF Dkt. #12 at 29. The ALJ noted Dr. Finnerty's agency review of Plaintiff's records finding that while Plaintiff had moderate difficulties in maintaining concentration, persistence or pace, he was nevertheless capable of performing jobs that were routine and simple in nature. *Id.* at 30. The ALJ consequently limited Plaintiff to simple, routine and repetitive tasks. *Id.* at 25. Accordingly, Plaintiff's argument is not well-taken.

Plaintiff also asserts that the ALJ's restriction that Plaintiff must "be reminded of assigned tasks at least twice each day" is "void for vagueness" because it merely sets a minimum number of times in which Plaintiff is to be reminded of assigned tasks. ECF Dkt. #13 at 10. Plaintiff asserts that articulation of a specific number of reminder times is necessary and the record showed that he required more than two reminders per day and this should have been communicated to the VE. *Id.* The ALJ noted that Plaintiff and his mother testified regarding his need for frequent reminders. ECF Dkt. #12 at 25-26. However, the ALJ also cited to Plaintiff's report to Ms. Ottolenghi at a therapy session that he was remembering his appointments, canceling those that he could not keep, and keeping a daily calendar with him. ECF Dkt. #12 at 28. The ALJ also noted that Plaintiff's discharge summary from counseling indicated that he did not return to therapy after reporting progress in using skills and coping strategies and a decrease in ADHD symptom interference. *Id.*

He further cited to the opinion of Dr. Sunbury, an agency examining consultant, who found that Plaintiff was only mildly limited in understanding, remembering and following directions, and he cited to Dr. Finnerty's agency consulting opinion that Plaintiff's functional abilities were likely to improve with sustained treatment and sobriety. Despite this evidence, the ALJ gave Plaintiff the benefit of the doubt and adopted a daily reminder limitation of at least twice daily into his RFC based mainly upon Plaintiff's testimony and the testimony of his mother that Plaintiff had difficulty remembering things. Plaintiff fails to show by caselaw or evidence in the record that such a limitation is vague or that he required more than two reminders per day.

The same analysis applies to Plaintiff's argument that the ALJ erred by imposing a limitation to occasional interaction with co-workers and not imposing the same limitation on Plaintiff's ability to interact with the public. ECF Dkt. #13 at 10. The ALJ noted that Plaintiff had a supportive relationship with his long-term girlfriend and his mother, as well as his son and a friend. ECF Dkt. #12 at 29. The ALJ also noted that Plaintiff had reported to Dr. Sunbury that he had good relations with co-workers and supervisors. *Id*. at 29, citing ECF Dkt. #12 at 393. The ALJ further cited to Plaintiff's report to Dr. Bentley that he was getting along with people and was able to focus on his jobs. *Id.* at 28. As pointed out by the ALJ, Dr. Sunbury and Dr. Finnerty found that Plaintiff was only mildly impaired in social functioning, including relating to fellow workers and supervisors. *Id*. Despite such evidence, the ALJ apparently gave some credence to Plaintiff's testimony that he did not get along well with people so he limited Plaintiff's interaction with co-workers to an occasional basis only but he did not limit Plaintiff's ability to interact with the public. *Id*. at 24-25. Plaintiff fails to cite to caselaw or evidence in the record that a limitation on interaction with the public was necessary or must correspond with a limitation to occasional interaction with co-workers.

Plaintiff also asserts that the ALJ posed hypothetical individuals to the VE which included limitations that the VE testified would have resulted in the preclusion of all work. ECF Dkt. #13 at 11. For example, Plaintiff cites to the ALJ's hypothetical person presented to the VE which had additional limitations to one to two step tasks, occasional interaction with the public, and close supervision, *Id*. The ALJ had indeed presented to the VE a fourth hypothetical individual

who had no exertional limitations but whose work was limited to jobs that did not require written communication, jobs that involved simple, routine, repetitive tasks with one or two step tasks, only occasional decision-making and changes in the work environment, close supervision whereby a supervisor would check work at least four times per day, and no more than occasional interaction with the general public and co-workers. ECF Dkt. #12 at 87-88. The VE testified that these limitations would preclude all work. *Id.* at 88.

"[W]hen posing a hypothetical question to a vocational expert, an ALJ is only required to incorporate into the hypothetical question limitations which he accepts as credible." *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). Here, while the ALJ presented the VE with four different hypothetical individuals, he decided that the one hypothetical which was most supported by the evidence in the record did not include the one to two step tasks limitation, the close supervision limitation or the occasional interaction with the general public limitation. The ALJ cited to the evidence that supported his RFC, which included his credibility determination of Plaintiff's testimony and the testimony of his mother and girlfriend, and a review of the medical evidence and opinions in the record. Plaintiff asserts that the limitations in the fourth hypothetical were supported by the record due to his medical diagnoses of adjustment disorder with mixed anxiety and depressed mood, ADHD and antisocial personality traits. ECF Dkt. #13 at 11-12. However, "[a] diagnosis alone does not define the functional limitations caused by an impairment." *Caillet v. Astrue*, No. 5:11-cv-2155, 2012 WL 4120383, at *8 (N.D. Ohio Sept. 19, 2012), unpublished, citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health and Human Servs.,* 862 F.2d 1224,1227 (6th Cir.1988).

Plaintiff also argues that Dr. Sansait's marked limitations support the inclusion of the omitted limitations presented to the VE. ECF Dkt. #13 at 11-12. However, as found above, substantial evidence supports the ALJ's decision to attribute only little weight to the assessment of Dr. Sansait based upon the ALJ's review and analysis of Plaintiff's testimony, the testimony of his mother and girlfriend, and the medical evidence in the record. Plaintiff's disagreement with the weight that the

-15-

ALJ assigned to Dr. Sansait's assessment is not a basis upon which to overturn the ALJ's RFC determination. *Caillet*, 2012 WL 4120383, at *7 (citation omitted).

Plaintiff lastly asserts that the ALJ's past work determination at Step Four is erroneous because he failed to evaluate whether Plaintiff's past work as a laborer and kitchen helper had sufficient earnings and duration to render them relevant and he failed to evaluate the mental demands of these occupations. ECF Dkt. #13 at 10-11. Plaintiff cites to SSR 82-62 and SSR 96-8p in support. *Id.*

SSR 82–62 outlines the factors that an ALJ must consider in determining a claimant's ability to perform his past relevant work and provides the following in relevant part:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue clearly and explicitly as circumstances permit.
> * * *
> A decision that an individual is not disabled, if based on §§ 404.1520(e) and 416.920(e) of the regulations, must contain adequate rationale and findings dealing with all of the first four steps in the sequential evaluation process. In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82–62, at *4. SSR 96–8p provides that an ALJ's RFC assessment must address a claimant's exertional and nonexertional capacities and must be based "on all the relevant evidence in the case record," which includes: a claimant's medical history, medical signs and laboratory findings, the effects of treatment, including side effects and dosages, daily activities, lay evidence, recorded observations, medical source statements, the effects of symptoms, such as pain, that are reasonably attributed to a medically determinable impairment, attempted work efforts, need for a structured

-16-

living environment and work evaluations. SSR 96–8p. In the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p. The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." *Id*.

Courts have found ALJ decisions lacking in substantial evidence as to a claimant's ability to return to his past relevant work unless the ALJ determines the demands of that work and relates those demands to the claimant's current physical abilities. *See Branch v. Astrue*, No. 4:10CV485, 2010 WL 5116948 (N.D.Ohio Dec.9, 2010), citing *Goodwin v. Astrue,* 2010 WL 1610942, at *7 (S.D.Ohio Mar.25, 2010); *Strittmater v. Schweiker*, 729 F.2d 507 (7th Cir.1984); *Roy v. Sec'y of H.H.S.*, 512 F.Supp. 1245, 1259–60 (C.D.Ill.1981). If an ALJ fails to advance such proof at Step Four or fails to show that the claimant's RFC is consistent with the demands of his past relevant work, a remand is required. *Branch*, 2010 WL 5116948, at *9. However, courts have looked to the testimony at the ALJ hearing in order to determine whether the ALJ made the required findings of fact as to the physical and mental demands of a claimant's past relevant work. *See Branch*, 2010 WL 5116948, at *9.

Here, Plaintiff is correct that the earnings and duration of Plaintiff's past occupations as a laborer and kitchen helper were not discussed in the decision or at the hearing. Nor were the mental demands of Plaintiff's laborer and kitchen helper jobs. However, even if the ALJ erred in his Step Four analysis, the fact that the ALJ proceeded to make a Step Five alternate decision renders any error at Step Four harmless if substantial evidence supports the Step Five decision. *See Stull v. Astrue*, No. 3:10-CV-693, 2011 WL 830633, at *6 (N.D. Ohio Jan. 18, 2011), unpublished ("unless the ALJ's finding at Step Five is unsupported by substantial evidence or there is a procedural violation, the ALJ's error at Step Four would be harmless.")(citations omitted).  Plaintiff presents

-17-

no assertion that substantial evidence is lacking for the ALJ's Step Five analysis and the Court finds that substantial evidence supports his Step Five determination. As explained above, substantial evidence supported the ALJ's RFC for Plaintiff that did not include the additional restrictions to one to two step tasks, close supervision, or only occasional interaction with the general public. Plaintiff does not take issue with the rest of the RFC that the ALJ determined for Plaintiff and the presentation of that RFC in the first hypothetical individual presented to the VE. The ALJ relied upon the treatment notes of Ms. Ottolenghi and the assessment of Dr. Finnerty, and gave partial credence to the testimony of Plaintiff and his mother in determining that Plaintiff could perform simple, routine and repetitive tasks that required no written communication, only occasional decision-making, changes in the work environment, and interaction with co-workers, and with reminders of assigned tasks at least twice per day. The ALJ presented this hypothetical individual to the VE and the VE testified that such an individual could perform jobs such as a clothes presser, cleaner and metal sorter as contained in the Dictionary of Occupational Titles with the RFC. ECF Dkt. #12 at 31-32.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint with prejudice.

DATE: March 19, 2014

              */s/George J. Limbert*
              GEORGE J. LIMBERT
              UNITED STATES MAGISTRATE JUDGE